## THE FIRST BANK OF HILO, LIMITED, *v.* C. K. MA-GUIRE AND SOLOMON LALAKEA, ADMINIS-TRATOR OF THE ESTATE OF T. K. LALAKEA, DECEASED.

### No. 1161.

ERROR TO CIRCUIT COURT, FOURTH CIRCUIT.
HON. C. K. QUINN, JUDGE.

SUBMITTED MAY 3, 1919.                    DECIDED JULY 7, 1919.

COKE, C. J., KEMP AND EDINGS, JJ.

ASSIGNMENTS—*public officers—salaries.*

An assignment by a public officer of his unearned or anticipated salary is void as being against public policy.

COMPROMISE AND SETTLEMENT.

The compromise of a suit neither admits the validity of the claim urged nor ascertains any amount as being due and amounts to no more than saying that so much is paid to be rid of the controversy.

OPINION OF THE COURT BY EDINGS, J.

This case is before the court upon a writ of error to review a judgment entered in favor of the defendant Solomon Lalakea, administrator of the estate of T. K. Lalakea, deceased, in the circuit court. The facts show that the action was one of assumpsit on a promissory note for $185 made and executed by the defendant C. K. Maguire and T. K. Lalakea to the plaintiff; that although the defendant Maguire was joined as a party defendant he was not served with process and did not appear; that H. V. Patten was the cashier and treasurer of the plaintiff corporation in December, 1907, and had charge of its business at that time; that on December 18, 1907, defendant Maguire applied to Patten, as cashier and manager of

the said bank, for the loan of $185, stating as a reason that certain policemen wanted advances on their salaries for that month, i. e., December, totaling this amount, to which application Patten consented and stated that the bank would loan the amount upon a note to be executed by Maguire and T. K. Lalakea; that the loan was thereupon made, Maguire received the money and the note was signed thereafter by Maguire and Lalakea; that at this time T. K. Lalakea and Maguire were respectively treasurer and auditor of the County of Hawaii; that the said note contained the following clause:

"For the purpose of securing the payment of our Promissory Note of the above date in favor of The First Bank of Hilo, Ltd., when due, and the interest that may accrue thereon, we do hereby assign, transfer and set over, and herewith deliver, to the said First Bank of Hilo, Ltd., and assigns, the following:

| "Salary | J. W. Kuaimoku | December 31, 1907 | 45.00 |
| " | Y. K. Kaapa | "    "    " | 35.00 |
| " | K. Kawelu. | "    "    " | 35.00 |
| " | K. Kupuna | "    "    " | 35.00 |
| " | G. Kauwe | "    "    " | 35.00 |

185.00;'"

that "about the end of the month" Maguire brought to the bank an order, drawn in favor of the First Bank of Hilo, Ltd., on the treasurer of the County of Hawaii, signed by himself as auditor of the County of Hawaii, made out upon a blank of the form adopted for county warrants, and being for the sum of $185, the amount of the loan, which was accepted by the bank, "Bills receivable" was credited with the amount in the books of the bank, and the note stamped "paid" and delivered to Maguire; that the bank did not have any claim against the County of Hawaii in December, 1907, or in January, 1908; that no other payment of the note in question has

ever been made; that the bank had possession of the note at the time this action was brought, having received the same from R. W. Breckons, Esq., who was at the time he delivered the note to the bank acting as special counsel for the County of Hawaii; that no interest has ever been paid on this note except the interest for December, 1907, which was deducted from the loan in advance; that the policemen whose salaries Maguire and Lalakea assigned or attempted to assign to the bank as security for the loan never at any time made any direct assignment to the bank; that the process of cashing county warrants by the bank, including the warrant in question, No. 2071, was as follows: Warrants were handed in to the bank (in this case by Maguire) the same being regarded as cash by the bank, and entries made in the books of the bank, the warrants were taken by a clerk of the bank to the treasurer of the County of Hawaii, who issued a single check for all the warrants that were brought to him at any one time, said check being drawn payable to the First Bank of Hilo, and against an account standing in the name of T. K. Lalakea, treasurer of the County of Hawaii; that defendants' exhibit "3" namely, a check for $4,906.94, was drawn and disposed of in this manner and included the amount of warrant No. 2071; that in October, 1913, a demand was made upon the bank by the County of Hawaii for the sum of $56,723.20, the same being the sum total of a number of warrants, a list of which was attached to the demand, which had been drawn, payable to the bank, by Maguire, and which warrants were claimed by the county to be illegal and which had been handled by the bank in the manner above described and which included the warrant in question; that this demand was followed by some negotiations, as a result of which an agreement of compromise was entered into which recites in substance "that during a period

covering from the month of January, 1907, to the month of June 1912, one Charles K. Maguire was the duly elected, qualified and acting auditor of the County;" that "during the said period the said Charles K. Maguire, auditor as aforesaid, did issue divers warrants directed to the treasurer of the County of Hawaii in favor of the said bank, a list of which said warrants * * * is * * * hereto attached and made a part hereof, all of which said warrants were fraudulently and illegally drawn and were in payment of claims and demands not chargeable against the said County; and the said bank in good faith, from time to time, presented the said fraudulent and illegal warrants to the county treasurer in the regular course of business and received therefor from the treasurer money belonging to the County of Hawaii, and the County has now demanded repayment of all of said money and has threatened to commence an action at law for the recovery of the same; and there now exists between the County and the said bank a difference of opinion concerning the liability of the bank to the County but said parties have undertaken to make an amicable adjustment of questions of law and fact existing under the transaction aforesaid and have finally concluded to accept an agreement whereby the bank shall pay and the County shall receive the sum of money hereinafter named and thereby the County shall release the bank from any and all liability on account of the transactions aforesaid. Now, therefore, the County in consideration of the premises and of the receipt of Forty Thousand Dollars ($40,000) received from the bank, the receipt whereof is hereby acknowledged, has released and does hereby release and forever discharge the said bank from the further payment of any money on account of any demand, right or claim now or hereafter coming due to the County from or on account of the unlawful or fraudulent draw-

ing of any of the said warrants by the said Charles K. Maguire, acting as auditor as aforesaid, and on account of paying of said warrants;" and the County further covenanted with the bank to institute any suit or action for and on behalf of the County against any persons "to be designated by the bank to recover such sum as may now or hereafter become due to the County from the fraudulent or unlawful drawing of any warrant by the said Charles K. Maguire" and that any and all sums recovered by the County should be paid over to the bank; that the said agreement was duly executed on the 30th day of October, 1913, by the bank and by the County; that of said amount of $40,000 the bank received from the bondsmen of Maguire $2,712.75, leaving the actual amount which the bank expended in this compromise $37,287.25; that since the date of settlement with the County no charge against Maguire and Lalakea, or either of them, under the head of "Bills receivable," or otherwise, has been entered in the books of the bank, but an entry of $40,000, under the head "Bills receivable" has been made; that individual warrants were issued by the auditor to the several policemen whose salaries had been attempted to have been assigned by Maguire and Lalakea, for their respective salaries for December, 1907, demands for the same having been made by the policemen upon forms adopted for that purpose and allowed by the board of supervisors and paid by county warrants which were cashed by the bank; that the check given by the treasurer to take up the warrant for $185 and other warrants was drawn on the "General Fund," this being a checking account, maintained through the deposit of the treasurer of territorial warrants received from the treasurer of the Territory under certain statutory provisions; that C. K. Maguire and T. K. Lalakea are both dead; that Solomon Lalakea is the duly appointed, qualified and act-

ing administrator of the estate of the said T. K. Lala-kea, deceased.

The plaintiff in error contends among other things "that Maguire and Lalakea executed a collateral assignment of what purported to be the wages of five officers. This was only an incident to the entire transaction and was not even a principal incident. * * * The assignment of the salaries was only secondary and collateral to the principal undertaking." This theory is mischievous and fallacious. The assignment of the salaries by Maguire and Lalakea was the sole excuse or justification advanced by the bank for receiving from the auditor a county warrant drawn in its favor for any purpose when it knew that the County was not indebted to it in any amount, and they certainly would not have been relieved from responsibility because the unauthorized warrant was drawn to pay Maguire's individual indebtedness. A very superficial knowledge on the part of the bank of business transactions of this nature would have enabled it to detect the fraud and possibly to have put a stop to this long line of embezzlements in their incipiency.

That these attempted assignments of the unearned salaries of the five policemen were illegal, null and void does not admit of argument, the general principle being well expressed in the following citation, supported by numerous decisions in the United States and in England:

"It is well settled both in England and the United States that a public officer cannot assign by anticipation the salary and fees paid to him for the purpose of maintaining the dignity of his office and securing the due discharge of its duties. * * * The protection thus extended to those engaged in the performance of public duties is not based upon the ground of their private interest, but upon the necessity of securing the efficiency of the public service by insuring that the funds provided for its maintenance shall be received by those who are to perform the

work, at the periods appointed for their payment.    The assignment of such funds before they are due impairs the efficiency of the public service, and is void both in law and equity as being against public policy." 2 A. & E. Ency. L. 1033.

When the plaintiff in error accepted this warrant No. 2071 it took what it knew to be an order upon the treasurer of the County of Hawaii for the alleged interest in the salaries of the officers assigned to it by Maguire and that it could not have any interest in these salaries except by virtue of the assignment by Maguire and Lalakea and it, the plaintiff in error, accepted it (warrant No. 2071) with presumptive knowledge that the assignment by which they acquired possession of it was void as against public policy.    This warrant they received in payment of the note sued upon and afterwards converted the warrant into cash.    This constituted payment of the note and extinguished the bank's right to maintain a suit upon said note.

Further—upon the 30th day of October, 1913, the plaintiff in error and the County of Hawaii entered into the agreement herein set forth.    This agreement was unquestionably a compromise in the fullest legal sense.    "Compromise has been defined as an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences upon such terms as they can agree upon." 6 A. & E. Ency. L. 418.    "The compromise of a suit neither admits the validity of the claim urged, nor ascertains any amount as being due, and amounts to no more than saying that so much is paid to be rid of the controversy." 12 C. J. 339.    "An offer by a party to pay a sum of money by way of compromise of an existing controversy is not to be used as evidence against him. * * * The reason why the mere offer of money or other thing by way of compromise is not to be evidence against him who makes it is very plain and easily understood.

Such an offer neither admits nor ascertains any debt and is no more than saying that so much will be given to be rid of the controversy." *Sanborn* v. *Neilson,* 4 N. H. 501. "An entire claim may be paid to avoid a lawsuit, the payer intending to admit nothing but his desire for peace, the claimant understanding that nothing else is admitted and both parties believing that the payer is not liable, or having no opinion on the subject." *Colburn* v. *Groton,* 22 L. R. A. 763.

In the compromise under discussion there was a concession by the bank to the County of the amount of $40,000, and there was a concession from the County to the bank of the difference between $40,000 and the claim of $56,723.20, but there was no admission by either side that there was any merit in the legal contentions of the other or any agreement as to the facts claimed to be involved. This agreement of compromise was a contract which superseded the preexisting claim, whether such claim was valid or invalid, and when payment was made it was a payment of the contract of compromise and not of the preexisting obligation, or alleged obligation, or of any portion thereof. We are unable to discover any process by which it can be legally deduced that the amount paid by the bank to the County paid any of these illegal warrants or that these warrants were ever adjudged illegal in any action instituted by the County against the bank.

There are other questions in the case but we deem the foregoing reasons sufficient to show that the judgment must be affirmed.

The judgment is affirmed.

*Carlsmith & Rolph* for plaintiff in error.

*W. H. Smith* and *Peters & Smith* for defendant in error Solomon Lalakea.